To move to the second case this morning, Eric Brant v. Schneider National. Mr. Tuttenham, are you with us? There you are. Yes. All right, you may proceed. May it please the court, Edward Tuttenham for Plaintiff Appellant Brant. This case presents a four count complaint that was dismissed for failure to state a cause of action. The first two causes of action were wage claims under the FLSA and Wisconsin minimum wage. The issue with respect to those claims is simply whether plaintiff's complaint set forth sufficient facts to plausibly state a claim that plaintiff was an employee of the defendants. Mr. Tuttenham, can I ask you a question about that? I actually find this to be a very interesting issue. You talk about the plaintiff's complaint, and the appellee talks a lot about the contract, okay? And it's almost like two ships passing in the night because my big question here is, where do we find the facts to apply to the question of control or economic reality? Forget the factored test, whether we apply a factored test or not. It seems to me like you're arguing we look to the first amended complaint, at least at the 12B6 stage, to determine whether or not you've pled enough to get you past the 12B6 stage on the question of control or economic reality. And the appellee is suggesting that we look to the contract, and we look to the contract, and we look to determine the economic reality, and not to the facts pled in the first amendment complaint. So can you respond to that? And can you tell me why you think we should ignore the contract language in determining control or economic reality, at least at the 12B6 stage, recognizing you may well lose if you get to summary judgment? It is black letter FLSA law that the controlling standard for who's an employee is economic reality. As Judge Easterbrook of this court said, the whole point of the FLSA is to defeat contractual arrangements and enforce economic reality. The drafters of the FLSA were perfectly well aware that an employer can craft a contract that gives the appearance of independence with none of the reality. That's the case we have here. So under the traditional 12B6 standard, the focus is the complaint. And the question is whether the complaint sets forth facts from which a jury could plausibly find that we were employees. You don't have to prove that we were employees, just sufficient facts that it's plausible. And the fact that the contract says other things and the contract by itself might establish a different result is simply irrelevant because it's- Would you agree that when the FLSA was enacted in the 1930s, Congress had decades of experience with state laws, similar state laws to try to protect workers that employers had been able to contract around. And that's why the FLSA was written as it was. And why Judge Easterbrook said it was designed to defeat rather than implement contractual arrangements. Precisely. I think there's, we cite a Supreme Court case from the 40s, I believe, that makes the point that- Supreme Court did that repeatedly. Yeah, exactly. It is down the road. I'm not saying that the contract is irrelevant. When it comes to the trial, the defendants can argue that in fact, the contract terms represent the economic reality of this situation. But at the pleading stage, we have very precisely and with explanation shown why the terms of the contract do not reflect the economic reality at all. That in fact, the reality under which our clients work was quite different. And it is those allegations that must be evaluated. Mr. Tottenham, can I ask you about the, under the terms of this contract, the dangers that your clients face if they were to lose this case ultimately? Under, I think paragraph 154 of your complaint refers to provisions in the owner-operator agreement. I want to ask Mr. Fitzgerald about this as well, but that retroactively rescinds the contract and requires indemnification and so on. And I wonder where that might fit in with section, with section 215, the anti-retaliation provisions in the FLSA. There are two provisions in the contract that raise questions of retaliation. It's one, if you have the temerity to even allege that you're an employee, you automatically under the contract become liable for all of the defendant's attorney's fees, even if you win. Even if we are successful in proving  under the contract, we would owe the defendant all of their attorney's fees for losing the case. In addition, if we win and are found to be employees, then under the contract, all payments paid under the contract are rescinded ab initio. Our clients are required to repay everything they receive, and they will receive then minimum wage instead. Those provisions go directly to our second cause of action for unjust enrichment, because those terms are among the many terms that we allege show that this contract is unconscionable. The second cause of action for unjust enrichment, we all agree that if there's a valid contract, then there is no claim for unjust enrichment, which is an equitable claim. What the contract is, at least we have alleged facts that would plausibly allow a jury to find that it is void as unconscionable, beginning with the two provisions that essentially codify FLSA retaliation, but there we set forth in detail the procedural unconscionability that this is a contract of adhesion. It's a hundred pages of fine print drafted by the defendants, non-negotiable. Mr. Tudman, you said it would allow a jury to find it, but I think in a Wisconsin law, isn't that something that a court would determine as a matter of law, whether or not a contract is unconscionable? I believe that is correct. It's an equitable claim. So the unconscionability would go to the court, but it's an issue that would go to the court after a trial. At the pleading stage, the only question is whether we have alleged sufficient facts showing procedural and substantive unconscionability to take discovery and have a trial where we would convince the court. And again, I think we have indeed set forth more than sufficient facts to at least create a plausible claim for unconscionability. After all, I mean, the bottom line of this contract is the plaintiffs, the moment they sign, take on tens of thousands of dollars worth of debt. The defendant takes on nothing. They don't even have to provide work. The plaintiffs are bound to work for the defendants, but the defendants don't have to give them any work. And more than that, the defendants can terminate the contract immediately at will. And by doing so, that terminates the lease and makes the driver liable for the full lease payment, tens of thousands of dollars. So literally what this contract says is, sign here, the moment you sign, Schneider can say, okay, we're terminating it. You owe us $40,000. That's what the contract says and permits. And we believe that at least that allegation is sufficient to show that it is plausible that this contract is unconscionable, particularly when that's added to the other things. I wanna turn, if I could, to the Truth in Leasing Act claim, because I think that in some ways is the most complicated. The Truth in Leasing Act requires the defendants to give to the driver the rated freight bill or some other document that is actually used to bill the customer so that the driver can evaluate whether he's being properly paid. We allege that they did not do that, paragraph 156. That should be sufficient to state a claim under rule eight. Well, you've gotta allege with respect to those, I think the issue comes down to causation. And how do you establish that these alleged violations, failing to provide the necessary information, for instance, caused the alleged injury? Well, I think in a disclosure statute like Tyler, I mean, you can't prove a negative. Maybe if they had made all the disclosures, they would have cheated our clients anyway. So in that sense, I can't prove it wouldn't have happened. But the point of Tyler is to give drivers enough information so that they can determine whether they're being cheated and act on it without having to go to court. And if they aren't given enough information, then that is considered sufficient causal link to give rise to a claim for damages. And we cite a number of cases to that effect, including the Carter case, the Davis case, the Melvin case. The district court said that, oh, well, that wasn't really enough because the contract, again, going back to the contract, says that you can see these documents in Wisconsin. We'll make them available in Wisconsin. But the statute doesn't say make it available. It says you have to give it to the drivers. And it says that for a very particular reason. These are cross-country drivers. They're going back and forth around the country to drive to stop working and drive to Wisconsin in order to look at one of these raided freight bills and to drive there in a semi truck that burns through fuel at an ungodly rate is tantamount to saying, we're just not going to give it to you. It is impossible for these people to drive to Wisconsin in order to get the documents that the statute says they are to be given. So I will, unless there are questions, I will reserve the rest of my time for rebuttal. Thank you, Mr. Tedham. Mr. Fitzgerald. Thank you, your honor. May it please the court. Matt Fitzgerald on behalf of Schneider. The district court correctly ruled that under the terms of the contract, the operating agreement, the lease, as well as the allegations of the complaint, that Mr. Brandt was a contractor and not an employee of Schneider. Now, first, the big picture, owner operators have been a part of the trucking industry for generations. Mr. Fitzgerald, I hate to cut you off, but I know our time is short. And I think Judge Hamilton had the same question that we were asking about earlier. Why should we pay any attention to the contract at the 12B6 stage in determining whether or not the first amended complaint alleges enough under rule eight to get the plaintiff past the pleading stage on the FLSA stage? If we're looking at economic reality, if that's the test, Judge Hamilton asked the question, if an employer can say, here's a contract, sign the contract, and under the terms of the contract, you are an independent contractor, despite what you may do. And it doesn't matter what profession. It could be a landscaper, it could be someone who's cleaning homes. You are an independent contractor. Doesn't that defeat the FLSA, period? If we're looking, if a plaintiff then files a complaint and we say, ah-ha-ha, let's look at the contract to determine the economic reality, here the contract says you're an independent contractor, that's it, the motion to dismiss is granted. Could a plaintiff ever sue under the FLSA under those terms? Yes, Your Honor. So it is true that the test at this stage is about pleading and it's about the economic realities, but this contract sets, establishes the framework of economic reality between the parties. So this is- This is gladly contrary to FLSA law. I mean, in my exchange with Attorney Putnam, Congress knew about these efforts of corporate lawyers to draft contracts to evade laws designed to protect workers and that's why it wrote the FLSA the way it did. Well, Your Honor, it's not that, the key here is not that the contract labels the owner-operators independent contractors. Of course it does that, but that's not what the argument is. The argument is the actual structure of the agreement creates rights and responsibilities in each parties. And we're told in the plaintiff's complaint that those, many of those are elusive. Suppose the evidence showed, for example, that fewer than 1% of your, the drivers you label as independent contractors actually hire employees to help them or actually carry for, drive for other carriers. Your Honor, it's still, it still would come down to the options created in the contract and the allegations. For instance, he does not allege that. He does not allege that it is that difficult. In fact, what he says is, I'm excluding from my, he says two things in the complaint. Very few people, for instance, hired any drivers to drive for them. And then he says, and I'm excluding all of those from my class. So he's essentially saying, as a matter of economic reality, it's impossible to hire a driver. And by the way, I'm excluding all of the people who actually did that from my class. So you can see- Do we have any sense of what those numbers are, particularly at the 12B6 stage? At the 12B6 stage, no, Your Honor, we don't. What do you think the evidence is gonna show? The evidence is going to show that there are a meaningful number of fleets and people. It is, I'm not sure, Your Honor, but it is a meaningful fraction of them who have more than one truck, for instance. It's also a large fraction of them, something like a third who bring their own truck, who don't lease it from Schneider. And these are small, independent businesses that go back to the original, for generations, in trucking. And the basic idea is an owner-operator brings a truck. However he gets it, pays the overhead, and receives revenue based directly on the actual revenue of hauling freight. And these are the earmarks of an independent business, and they're all true on the face of the contracts, as well as the complaint in this case. So as the district- What do we do with the allegations in the complaint that this supposed control over routes and schedules and loads is illusory? I mean, that, you know, you all, that Schneider insists on routes and schedules that really give a driver very little discretion or control. Your Honor, so you can see on the face of the operating agreement that the situation is that the, so the face of the operating agreement says, Schneider will make freight available for the owner-operators to select. It's on the first page of the operating agreement. He does not allege in his complaint that there were any particular schedules set for him, that they required him to carry any particular load. There's no allegation that he says, on this day, they required me to carry a specific load from here to here. What difference does it make as to what allegations are not in the complaint? Because, and look, even if I was to say, I agree, you know, the allegations here, if you look at the particular facts that are alleged, they may be thin to establish an employer-employee relationship, and they may not be able to establish them, and they may not be able to win at the summary judgment stage, but they do make allegations that the defendant told drivers they couldn't drive for other carriers, that the defendant monitored the manner in which the driver operated the trucks, including speed, location, hard braking incidents. They could use the information to discipline drivers. The defendants controlled the speed and prohibited more than 70 miles an hour. The defendants required the drivers to obtain permission before allowing passengers in their trucks and the cabs of their trucks. Why are these allegations not enough under Rule 8 at the 12B6 stage to survive a motion to dismiss on the FSLA? And I agree, there's a lot that's not in there, okay? But why is what's in there not enough to survive a motion to dismiss under Rule 8 at this stage in the proceedings? So, Your Honor, it's well settled that when you have a complaint and when you have an exhibit to a complaint, like a contract- No question we can consider the contract. Nope, I don't think anybody's disputing that. I think the question is, though, you can't contract out of the FSLA. You can't say the contract says the following, so ignore the economic reality, no matter what the plaintiff pleads, because the contract controls the facts and we shouldn't look at the first amended complaint. Right, Your Honor, and I'm not saying we shouldn't look at the amended complaint. It is about the complaint as well as the operating agreement. But the law is clear that to the extent there is tension between those two, that the court is entitled to focus on the operating agreement on the contract. That is- What law makes that clear under the FLSA? Your Honor, it's not- What's your best case at a court of appeals level for giving such controlling effects to the provisions of the contract in the face of allegations like this? Your Honor, the best two cases from this particular court of appeals, which are not in the FLSA context, but the best two cases from this court are Bogie v. Rosenberg, 2013, and also Northern Indiana Gun and Outdoor Shows from 1998. Those cases let you use documents that are referred to in the complaint. I'm pretty familiar with Bogie. I don't see how they solve your FLSA problem under Bartels, under the Arkansas Freight case, under our, is it Lawrence, I think, was the one that had Judge Easterbrook's concurrence and so on. What's your best case for letting a contract control in the FLSA context on this issue of employment? This has been litigated for generations. Your Honor, the principles from Bogie and from Northern Indiana apply here just the same. And I'm not saying that we ignore the complaint or that it's impossible on the face, what I'm not saying is, on the face of this operating agreement, it would be impossible for a plaintiff to plausibly plead that he's an employee. What I'm saying is, what he has actually pleaded is not, if you have a contract that says something and that describes an economic reality, not just a label, and on the other hand, you have a complaint that says the contract is a sham. But how does a contract describe an economic reality? I mean, that's where I'm struggling. Reality is reality. A contract describes what should occur, but how does it describe an economic reality? Well, it does that, Your Honor, by giving specific rights and responsibilities to each party. So for instance, the contract says here that the owner-operator, it says, quote, the owner-operator is not prohibited from providing transportation services for other common carriers. On whatever basis and whenever the owner-operator chooses, provided that the owner-operator complies with TRIPLEASE requirements of federal law and paragraph 18 below. And so you have these extensive- And gets consent and hires somebody else to monitor their compliance with safety concerns, right? And that is only in the context of if they are driving as their own, if the owner-operator is their own motor carrier, Your Honor. So that's different, that's- Okay. Could I ask you, Mr. Fitzgerald, to address some provisions in this contract that are very troubling to me in paragraph eight and paragraph 24 for drivers who have the temerity after signing such an agreement to argue that they are in fact in-law employees. And specifically, my question is whether you can direct this to other cases in which those provisions have actually been litigated and found enforceable. Your Honor, I'm not aware of any case like that. So these just sort of have an interiorum effect on drivers to discourage them from raising their heads and saying, I have rights here and I'm actually an employee. Well, Your Honor, our position is that the contract, under the terms of the contract, they are independent contractors with their own businesses. And if that's true, then they can enter into an agreement to essentially fee shift for litigation. What happens, does that apply even if they win? No, Your Honor, if they win, the Fair Labor Standards Act would prevent that from applying. So the terms of the contract that are facially unenforceable in the event of a swing. To the extent they are- Those terms at the very least. Those terms to the extent they'd be interpreted as requiring fees flowing in that direction. Is that what it says? Is that what it says? I'm not sure it specifies, Your Honor. Okay, there's one other area I wanted to ask you about, Mr. Fitzgerald, and that is the question of tort liability. I assume that every now and then drivers carrying loads for Schneider have accidents. I know you have a lot of drivers who are formally employees. What happens in litigation, tort litigation, with the independent contractors when they get involved in an accident? Right, Your Honor. So the independent contractors, when they get in an accident, the way that the tort liability works is as a matter of federal law, the motor carrier that's Schneider here is responsible for making sure that there's a certain amount of insurance that backs them. And so there is that responsibility created by federal law, but that very same federal law that talks about trip leases and these specific regulations that place the motor carrier as having responsibility specifically say that they are not intended to affect employee versus independent contractor status. You can find that at 49 CFR 376.12C. 376.12, that was tripping off the tongue. Okay, that's pretty good. Okay, and what about just common law liability determinations? I haven't had, frankly, a chance to look into that, how that works under this contract. So as a practical matter, I think the way that it works is the motor carrier is required to have or required to make sure is in place substantial insurance behind all of the independent contractors as well as the employees. There could be a difference between the two in the event of incidents that go beyond the full amount of coverage. Right, has that been litigated? I am not sure, Your Honor. And it could be different actually, of course, in different states with regard to their, yes. So the final thing, Your Honor, is owner operators, he has pleaded on the face of the complaint that Schneider has 10,000 employee drivers and several thousand owner operators. And the only thing that makes sense from that, him having been an employee driver at other places for many years, is that he opted to be an owner operator, to leave behind the stability of a regular wage for the potential to buy his own truck and make his own way in the trucking industry. And for that reason, he is a contractor. Thank you. Thank you, Mr. Shapiro. We have some time left, go ahead. A couple of brief points. One, just as an employer cannot contract out of its FLSA obligations, a worker cannot contract out of them either. And whether- Mr. Tottingham, could I issue a question on a different subject other than the FSLA? And this has to do with the unconscionable, your argument that the contract is unconscionable. Does the argument change a little bit or does it become easier or harder for you to establish at the pleading stage the contract is unconscionable if you survive on the FSLA claims? In other words, if you've pled enough in the contract stage that your client is an employee, not an employer, so you survive a motion to dismiss on the FSLA claims, do we look, as a matter of law, at the contract in a different light when determining whether it was unconscionable than if we determine that your client cannot survive the FSLA claims and is an independent contractor? Well, if he survives and has an FLSA claim, then yes, the contract is unconscionable. One part, for one reason, is that it is treating him as, controlling him as an employee, but giving him none of the rights. That is one basis for unconscionability. If the court were to find that he's, make the merits determination that he's an independent contractor at this stage of the case, which I really do not believe it can, we still allege multiple other reasons why the contract is both procedurally unconscionable. No, I got that, but I just wanna make sure I understand this point, and I think your point is, if we determine that there's enough that your client can proceed to discovery on the FSLA claims, then we have to look at the contract, as a matter of law, at this stage, in a little bit different light than we would look at it if we had determined that your client had not pled enough to proceed under the FSLA claims, right? I think that's your point. Precisely, but we also have other reasons why it is- I got that, I know that. I know your time is short, and I don't wanna take it off you, but I got that. If I could just clarify something here, Mr. Tottenham, I understand your position to be that you, at the very least, your unconscionability theory is an alternative. You're entitled to plead in the alternative, and you're entitled to pursue, to maintain alternative theories up to the point of final judgment, and even on appeal, for that matter, right? That is correct. Okay, thanks. To be honest- With my colleague's indulgence, we just used up your time on rebuttal, and if you wanna go ahead and make a couple, quickly, some of the points you plan to make, that would be- Okay, very quickly, just so I'm clear on that last point. The unconscionability claim is separate from the FLSA claim, because the damages are different. It may turn out, if the damages are the same, then it's an alternative claim, but for right now, it's not clear what the damages are. The appellee made the point that the Truth in Leasing Act has a provision that says this doesn't affect who's an employee and who's an independent contractor. That is true, but only the administrator of the wage-hour division of the Fair Labor Standards Act is able to say, as a matter of law, what does or does not create an employee standard. So the fact that the truth in lending regulations say something is really irrelevant. Finally, I just want, if there are any questions about the truth in leasing claim, we didn't talk about that much, but it is a very important claim. The defendant cited the stamply case out of this court that involved dismissing claims because the plaintiff could go check at headquarters whether he'd been cheated or not. John Hammond, you're going to have to wrap it up. Okay, I just want to say, but the issue of whether that itself was a tantamount to depriving the worker of the ability to get what he was supposed to be given was not in that case. And so it doesn't really help the defendants. I'll stop. Thanks to both counsel and the case is taken under advice.